JACOB F. FONTE, Executor, *v.* MEMEUCAN HORTON, Administrator.

1. PROBATE COURT: JURISDICTION: TO ENFORCE LEGATEE'S CLAIM FOR HIRE.—
The Court of Probates has jurisdiction to compel an executor to deliver to a legatee a slave specifically bequeathed to him, and as an incident thereto to enforce the legatee's claim for hire, during the time the slave was in the executor's possession.

2. SAME: SAME.—The ordinary and appropriate jurisdiction of the Court of Probates will not be defeated, because, by the rules and course of proceeding in another forum, the party obtaining the decree, will be restrained from reaping the benefits of it; and hence, the Court of Probates will proceed to render a decree in favor of a specific legatee of a slave, against the executor for hire, although the executor may be entitled in a court of equity to an injunction against the collection of the decree, upon the ground that the legatee is indebted to the testator in a sum exceeding the amount of hire claimed.

3. EXECUTOR AND ADMINISTRATOR: LIABILITY OF, FOR ACT OF HIS ASSOCIATE.—
An executor is liable for the acts of his coexecutor, which were, by agreement of the two, done by the latter, in the joint names of both and on their joint account.

4. SAME: SAME.—An executor is liable for a misapplication of the trust funds

made by his coexecutor, if by the exercise of reasonable diligence and care he could have prevented it.

5. SAME: SAME.—An executor is bound to take notice of an account rendered to the Court of Probates by his coexecutor, and he is chargeable with a knowledge of the misapplication of the trust funds therein disclosed.

6. SAME: LIABILITY OF EXECUTOR FOR HIRE OF SLAVE SPECIFICALLY BEQUEATHED.—If an executor by order of the Court of Probates, hire a slave specifically bequeathed, during the pendency of the litigation respecting the validity of the will, and apply the proceeds to the general estate, he will, upon the establishing of the will, be individually responsible to the legatee for the hire: the misapplication by the executor, of the hire to the benefit of the estate, will not constitute the legatee a creditor of the estate.

7. SAME: SAME.—If the specific legatee of a slave refuse to accept the legacy until the litigation then pending in relation to the validity of the will should be ended and the will established, he will nevertheless be entitled to recover hire from the executor, if the latter has actually received hire, or might have done so, by the exercise of ordinary care and diligence.

8. SAME: WHEN ACT OF ONE EXECUTOR IS EVIDENCE AGAINST HIS COEXECUTOR.—Where it is shown that slaves specifically bequeathed, were hired by one of the executors in the joint names of both and with the consent and approbation of both, an account showing the amount of the hires rendered by one, is evidence against the other.

9. SAME: SET-OFF BY EXECUTOR OF CLAIM AGAINST LEGATEE: CASE IN JUDGMENT.—When a specific legatee of a slave has acquired possession of a note payable to the executor, and which was taken by the latter for the hire of the slave whilst in the executor's possession, and the executor afterwards recovered a judgment against such legatee for the value of said note; it was held, that in a proceeding by the legatee against the executor to recover the hire, the latter was only responsible for so much as he had collected on the judgment; and that the executor would not afterwards be entitled to collect any portion of the judgment.

10. SAME: EFFECT OF A REFUNDING BOND, AS TO PROPERTY NOT EMBRACED IN IT.—The recital in a refunding bond, executed by a specific legatee of a slave, upon the delivery of the slave to him by the executor, " that the executor is thereby discharged from all claim or liability on account of said special legacy," is no discharge to the executor, from his liability for the hire of such slave, accruing before its delivery to the legatee.

APPEAL from the Court of Probates of Lawrence county. Hon. Joseph Neylans, judge.

*W. P. Harris,* for appellant,

Cited 2 Lomax Ex'ors, 328 (new edit.); Ib. 326; *Clerke* v. *Clerke,*

1 Ld. Raymond, 585; *Smith* v. *Hurd*, 8 S. & M. 682; *Noland* v. *Calvit*, 12 Ib. 273; 2 Munf. 321; 4 Grattan, 258; 11 Ib. 17.

*J. F. Fonte*, in *propria persona*,
Cited *Hill* v. *Robeson*, 2 S. & M. 54; *Berry* v. *Parkes*, 3 Ib. 625.

*H. F. Johnson*, for appellee,
Cited Rev. Code, p. 426, art. 12.

*George T. Swann*, on same side,
Cited 2 Story Eq. § 1283; *Clarke* v. *Clarke*, 8 Paige, 152; *Edmonds* v. *Crenshaw*, 14 Pet. 166; *Sutherland* v. *Brush*, 7 John. Ch. R. 22; *Shipbrook* v. *Hinchinbrook*, 16 Ves. Jr. 478; 2 Wms. Exors. 1293, 1294; *Lees* v. *Sanderson*, 4 Simmons, 17; *Noland* v. *Calvit*, 12 S. & M. 273; *Grinstead* v. *Fonte*, 32 Miss. 121; *Lyles* v. *Hutton*, 6 Gill. & John. 122; *Berry* v. *Parkes*, 3 S. & M. 625; *Cason* v. *Cason*, 31 Miss. 597; Hill on Trustees (marg. page), 374, and notes.

HANDY, J., delivered the opinion of the court.

The appellee filed his petition in the Probate Court of Lawrence county, to recover of the appellant, executor of Thomas Y. Grinstead, deceased, hires for certain slaves, specifically bequeathed by the appellant's testator to Wiley Y. Grinstead, the appellee's intestate.

The petition states in substance the death of the testator, in July, 1847; the specific bequest of the slaves; the sufficiency of assets to pay the debts, apart from this legacy; the appointment and qualification of the appellant and one Hilliard as executors, in July, 1847, and that the slaves were not delivered to the legatee until February, 1854; that from the time of their appointment, the executors, or one of them, hired out the slaves so bequeathed, till their delivery, and that the hires amounted to about $2874 50; that Hilliard settled his account and surrendered his letters at January term, 1853, and gave up into the charge and keeping of the Probate Court, all the assets remaining in his hands, leaving the appellant sole executor, who became entitled to take charge of the assets so surrendered; and prays a decree for the amount of the hires and interest.

The appellant demurred to the petition; and that presents the first question for consideration. It is insisted that, as the legatee had received from the executor, the slaves bequeathed to him, the court had not jurisdiction to decree the payment of the hires.

The legacy being specific, the title of the legatee vested at the time of the testator's death, and the produce of the slaves, from that time, became the property of the legatee, in like manner as the slaves themselves. 2 Lomax Executors, 152. He would have been entitled to the aid of the Probate Court in obtaining payment of the hires, as an incident to the legacy, upon the same principle by which he might have asked its aid in compelling the delivery of the slaves. If he only obtained a part of his right when the slaves were delivered, that does not destroy the jurisdiction of the court as to the residue; and this objection to the petition is untenable.

The answer of the appellant sets up several grounds of defence, which we will proceed to consider.

*First.* It is denied that the appellant ever received any of the notes or money for the hire of the slaves; but that they were hired out by Hilliard, the coexecutor, who took the notes for the hires, and afterwards settled his account with the Probate Court, and returned to the court the notes; and hence it is insisted that the hiring was a matter of individual responsibility on the part of Hilliard, for which the appellant is not bound, and that Hilliard was discharged by the account and settlement which he rendered, and to which the legatee did not object.

The answer shows, that the hiring of the slaves, by agreement between the two executors, was to be attended to by Hilliard, in the joint names of both executors, and that all notes taken therefor should be made payable to them jointly, as executors; and that Hilliard took the notes for hire accordingly, and reported the same to the appellant and to the Probate Court. It shows, that the hiring was in virtue of an order of the Probate Court, and admits that the slaves were only hired by the executors, respondent, and Hilliard, during a period of nine months.

It is plain, from these statements, that, although the matter of hiring out the slaves was committed to Hilliard, yet that it was in behalf of both executors, and in their joint names; and of course, that the appellant is responsible on account of the hiring, as fully

as if he had participated in the act. This is clear, from the general tenor of the answer, and especially from the fact stated, that, after the notes given for the hire were returned into the Probate Court, and went into the hands of the administrator of Wiley Y. Grinstead, the appellant claimed title to them, and sued, and recovered judgment against, Hemingway and Bowen for the money due upon them. The hiring is, therefore, a matter for which the executors were jointly responsible.

Hence, it was not incumbent on W. Y. Grinstead, or his administrators, to object to the account returned by Hilliard, nor was the accountability of the executors for the hires discharged by that account. It was not an account of final settlement of the estate, but was only an accounting of Hilliard's actings in the estate, leaving the settlement of the estate for the continuing executor, returning the notes for hire of the slaves to the court for subsequent administration, and which thereby became subject to the right of the appellant, the remaining executor. It is manifest that the rights of W. Y. Grinstead, on account of the hiring, were not affected by that settlement.

Again, it is said, that the claim of the appellee for hires is merely that of a creditor against the estate of Thomas Y. Grinstead, which could not be enforced in the Probate Court. But this view cannot be maintained upon the facts stated in the petition and answer.

The slaves were the property of the legatee under the will; and, according to the answer, were hired out by the executors, by order of the Probate Court, pending the litigation in relation to the validity of the will. It was, then, the duty of the executors to keep the proceeds of the hire subject to the claim of the legatee. They had no right to apply it to the benefit of the general estate; and, if they did so, they are liable to the legatee for applying his fund to the general estate; and he would be entitled to recover it from them. The application of the fund to the benefit of the general estate would not necessarily give the legatee claim against the estate, but it would render the executor liable individually to the legatee. If the money belonging to the legatee was applied by the executor to the benefit of the general estate, that might justify the court, upon full proof of the justice of such course, and as between the executor and the estate, to allow the executor credit for

the amount so applied by him to the use of the estate. But the claim of the legatee is against the executor, and not against the estate.

Hence, if the view of the facts taken in behalf of the appellant—that Hilliard mingled the proceeds of the heirs with the general assets of the estate, and applied them to its use—be true, the legatee is entitled to recover his money from the executors who have misapplied it; and that the appellant, being responsible for the acts of his coexecutor in the matter, is liable to the appellee for the misapplication of the fund. If the funds were so applied, and it was shown by the final account of Hilliard, the appellant was bound to have known it; and, his failure to prevent it, must be taken as such an act of negligence on his part, as will charge him with the act. 2 Story's Eq. § 1283. He had the means of preventing it, by the exercise of reasonable care and diligence; and it cannot be supposed that he was ignorant of the fact that his coexecutor was rendering his final account. It was, then, his duty to the estate and to himself, unless he approved of it, to prevent the application of the legatee's fund, to the use of the general estate; and, having failed to do so, he became responsible personally for the act.

But it is said that the appellant is not liable for that part of the fund consisting of notes for hire, which Hilliard returned to the Probate Court with his account, because the notes never came to his hands and he never collected any money upon them.

It is above shown, that the appellant had the right and title to these notes. It was his duty to take possession of them, and to proceed to collect the money due upon them, or to deliver them to the representatives of W. Y. Grinstead. If he failed to take due steps to collect the money, he is liable to the legatee for the amount which has been lost by the neglect, and he is also chargeable with interest.

Again, it is said that W. Y. Grinstead, having refused to receive the slaves under the will, in consequence of which the executors were compelled to keep them on hand and to hire them out, ought not to be permitted to claim hire for them during the time the litigation in relation to the will was pending. But although he refused to accept them, yet they were not the property of the

estate; and when the litigation in regard to the will was terminated, establishing the will, his title had relation to the death of the testator, and he became entitled to the intervening hires as a legal right growing out of the legacy.

It is further objected, that the appellees are estopped from the claim here set up, by the refunding bond executed by them to the appellant. This bond recites the legacy of the specific slaves, and their increase, and the delivery of them by the appellant to the obligors of the bond, and that the appellant was "therefore discharged from all claim and liability for and on account of said special legacy," &c. It is plain that this recital has reference to the specific slaves received. The object of the bond was to indemnify the executor for delivering these slaves, in the event of any debts coming against the estate and chargeable "upon said slaves or their value." The discharge referred to,—which indeed is not a necessary part of the bond,—cannot be construed to embrace more than what was actually received, and therefore it cannot extend to the right of the obligors to the hire of the slaves.

Another objection taken to the appellee's right to recover, is that it is shown by the answer that the estate of W. Y. Grinstead is largely indebted to the estate of Thomas Y. Grinstead, by decree and judgment, to an amount greatly exceeding the sum claimed by the appellee in this case; that it would be inequitable under such circumstances to allow a recovery in this case; and, as the Probate Court is incompetent to take these considerations into view and administer the equity of the case, that is a sufficient reason why that court should not grant the relief here sought.

But we have above seen that the appellee's claim is against the appellant, and not against the estate of which he is executor. And, in addition to this, it is not a good reason why the Probate Court should not determine a matter within its appropriate jurisdiction, that, under the rules and course of proceeding, appropriate to another forum, the party obtaining the decree in the Probate Court will be restrained from reaping the benefit of it. Such considerations cannot be permitted to deprive the Probate Court of its plain jurisdiction over the matter.

It is also assigned for error that the court admitted in evidence the account of Hilliard, showing the acts done in relation to the

hire of the slaves, and the condition of that matter. But, in addition to the connection existing between the two executors in that matter, which rendered the appellant responsible for the acts of Hilliard, the answer of the appellant distinctly refers to it, as showing the amount of the hires. Upon either of these grounds the evidence was competent.

It only remains to consider whether the decree of the Probate Court is correct, as to the amount with which the appellant was charged.

The appellant is charged with the entire amount of the hires of the slaves bequeathed to W. Y. Grinstead, appearing to be due from the account of Hilliard, and the notes and bonds returned by him. But it appears, by the answer of the appellant—which must be taken to be true, as the case appears to have been set for hearing upon the bill, and answer, and exhibits, referred to by the petitioner—that of the notes returned to the Probate Court by Hilliard, the representatives of W. Y. Grinstead received and appropriated to their use the amount of two thousand eight hundred and seventy dollars, on account of the claim for hire set up in the present petition; and that the appellant afterwards sued them, and recovered judgment for the same, claiming title to the notes as executor of Thomas Y. Grimstead, which judgment remains unsatisfied, except the sum of three hundred and eight dollars, paid to the appellant on the 8th February, 1858. Under these circumstances, it is manifest, that the appellees should not have recovered against the appellant for the amount of the notes which the representatives of W. Y. Grinstead received, unless the judgment rendered on account of these notes had been paid. It appears that the representatives of W. Y. Grinstead received the entire amount of the notes returned to the Probate Court, and due for the hire of the slaves bequeathed to him, except the sum of three hundred and eight dollars, and that the appellant actually received only that amount. It is clear that he should have been charged only with that sum and interest, the balance of the judgment recovered by him being unpaid, and with any amount which Hilliard received on account of the hire of the slaves bequeathed to W. Y. Grinstead. It also follows, from this view, that if the appellant has subsequently received the whole or any part of the amount of the judgment re-

LAW SCHOOL LIBRARY

covered by him, he is also accountable to the appellee for the sum so received by him; and that, if the judgment remains wholly unsatisfied as to the balance due after the payment of the sum of three hundred and eight dollars, that the appellant has not the right to enforce the judgment. Indeed, it would appear, from the facts disclosed in this case, that that suit was a very useless and improvident litigation; for the representatives of W. Y. Grinstead had received the notes for the hire, which, although strictly belonging to the appellant in point of the legal title, the proceeds were the property of the representatives of Grinstead.

In receiving credit, therefore, in this proceeding, for the balance due on that judgment, the appellant would not be entitled to enforce the judgment further, and it would be virtually satisfied.

The decree is reversed, and the cause remanded, to be proceeded with upon the principles herein stated.