[No. 9653. In Bank. — November 30, 1887.]

IN THE MATTER OF THE ESTATE OF ROBERT A. SANDERSON, DECEASED.

ESTATE OF DECEDENT — EXECUTOR'S ACCOUNT — CONTEST — NEW TRIAL — ABSENCE OF FINDINGS — BILL OF EXCEPTIONS. — A new trial of a contest over the accounts of an executor will not be ordered on appeal, on the ground that the court below failed to find upon the issues raised by the contest, when the bill of exceptions fails to distinctly show that findings were not waived.

ID. — EXCEPTIONS TO ACCOUNT — POWER OF COURT TO EXAMINE. — Under section 1631 of the Code of Civil Procedure, the court, on a proceeding for the settlement of the account of an executor, has power to examine him touching any and all items of the account, and to base its decree of settlement upon such examination, notwithstanding no person interested in the estate has filed specific exceptions to the items to which the examination is directed.

ID. — UNCOLLECTED DEBT — LIABILITY OF EXECUTOR. — An executor is answerable for the amount of an uncollected debt due the decedent as appraised in the inventory, unless it appears to the court that the failure to collect the debt was not the result of the negligence of the executor.

ID. — TRIAL OF EXCEPTIONS — JURY. — Exceptions to the account of an executor do not create "issues of fact" such as must be submitted to a jury on demand of a party in interest.

ID. — LIABILITY OF CO-EXECUTORS — RELEASE OF ONE. — The obligations of co-executors arise from their contract, and are several; and for a neglect of their duty as trustees, their liability is the several liability of each, and a release of one does not discharge the other.

| 74 | 199 |
| 85 | 152 |

| 74 | 199 |
| 87 | 4 |

| 74 | 199 |
| 95 | 672 |

| 74 | 199 |
| 109 | 423 |

| 74 | 199 |
| 120 | 463 |

| 74 | 199 |
| 121 | 639 |

| 74 | 199 |
| 128 | 388 |

| 74 | 199 |
| 131 | 476 |

| 74 | 199 |
| 133 | 585 |
| 133 | 587 |

| 74 | 199 |
| 140 | 243 |

| 74 | 199 |
| 147 | 619 |

ID. — BAR OF DEBT BY STATUTE OF LIMITATIONS — NEGLIGENCE. — One of two executors, having the exclusive possession of a note and mortgage belonging to the estate, with knowledge that they were nearly outlawed, took no steps to enforce the same until after they were barred by the statute of limitations. The debt was in consequence lost to the estate. His co-executor took no steps in the matter, relying upon the positive statements of the other that he knew all about it, and that there was plenty of time to attend to the collection of the note. The parties inter-ested in the estate subsequently, by a written instrument, promised not to seek any legal redress against the co-executor. *Held*, that the executor having the exclusive possession of the note and mortgage was alone guilty of negligence, and was properly chargeable therewith, and that his liability was not discharged by the release of his co-executor.

ID. — EXCHANGE OF CURRENCY FOR GOLD. — An executor who exchanged currency belonging to the estate for its equivalent in gold, at a time when gold was at a premium, for the purpose of satisfying a debt then due by the estate, which was payable in gold, in a subsequent accounting, when currency and gold are of equal value, should only be charged for the amount of the gold purchased.

ID. — JUDICIAL NOTICE — GOLD STANDARD OF VALUE IN CALIFORNIA. — The courts of California take judicial notice that coin was always treated as the standard of value in that state, and was so recognized by the legislature.

ID. — DELAY IN ACCOUNTING — INTEREST. — An executor who is guilty of great delay in accounting is properly chargeable with legal interest upon balances, with annual rests.

ID. — STATUTE OF LIMITATIONS — OBLIGATION TO ACCOUNT. — The obligation of an executor to account is continuous, and does not become barred by the statute of limitations.

ID. — ORDER SETTLING ACCOUNT — SUFFICIENCY OF. — On a contest of the accounts of an executor, an order that the account "be and the same is hereby allowed and approved, except as to the matters following," etc., is sufficient as an order settling the account.

APPEAL from an order of the Superior Court of the county and city of San Francisco settling the accounts of an executor.

The facts are stated in the opinion of the court.

*T. Z. Blakeman*, for Appellant.

A new trial should be ordered for the failure of the court to find upon the issues raised by the contest. (*Estate of Burton*, 63 Cal. 37; *Estate of Crosby*, 55 Cal. 575; *Bennett* v. *Pardini*, 63 Cal. 154.) The exception made to the Braly note raised no contest. It simply asserted the

contrary of what appeared on the face of the account. If the note remained uncollected through the fault of the executor, the contestant should have made such showing in the written contest. (Code Civ. Proc., secs. 1635, 1714–1717; *Montgomery* v. *Dunning*, 2 Bradf. 220; Redfield on Sureties, 678; *Estate of Burton*, 63 Cal. 37.) If Sanderson was guilty of such negligence as rendered him liable, his co-executor was also liable; but the devisees having released the latter, Sanderson is thereby also released. (7 Wait's Actions and Defenses, 461; *Brown* v. *March*, 7 Vt. 320; *Urton* v. *Price*, 57 Cal. 270; *Ayer* v. *Ashmead*, 31 Conn. 447; *Lovejoy* v. *Murray*, 3 Wall. 17; Cooley on Torts, 139; *Tompkins* v. *Clay Street Hill R. R.*, 66 Cal. 163; *Irvine* v. *Milbank*, 15 Abb. Pr., N. S., 378; *Spencer* v. *Houghton*, 68 Cal. 82.)

*Cope & Boyd*, for Respondent.

The statute of limitations did not run against the right of the devisees to demand an accounting. (*Wheeler* v. *Bolton*, 54 Cal. 302; *Abila* v. *Burnett*, 33 Cal. 658; Code Civ. Proc., sec. 1637.) The appellant alone was properly held liable for his negligence in not collecting the note. (*Peter* v. *Beverly*, 10 Pet. 533; *Osmiston* v. *Olcott*, 84 N. Y. 346; *McKim* v. *Aulbach*, 130 Mass. 481; *Robinson's Estate*, 7 Phila. 61; *Kerr* v. *Kirkpatrick*, 8 Ired. Eq. 137.)

McKINSTRY, J.— 1. It is contended by appellant, L. A. Sanderson, executor, that a new trial of the contest of his account should be directed, because the court below failed to find upon the issues made by the contest. But the transcript contains no bill of exceptions which shows that findings were not waived, *if findings were proper.* There is a bill of exceptions which recites that, when the "statement on motion for a new trial" was settled, the judge struck out from the proposed statement an allegation, "On October 3, 1883, counsel for contestants re-

quested counsel for the executor to waive findings of fact, which counsel for the executor declined to do," and that "the said matter so struck out recited facts." The trial of the contest took place April 12th, and the order settling the account was made and entered October 11, 1883. For aught that appears, findings may have been waived at the close of the testimony, or before or after October 3, 1883, and prior to the entry of the decree. The bill of exceptions fails to show distinctly that findings were not waived. Moreover, the matter struck out has no proper place in the *statement*.

2. Appellant claims that, by failing to contest his verified account upon the specific ground that the balance of the "Braly note" remained uncollected, by reason of the neglect of the executor, the contestants admitted that it remained uncollected without any fault on his part. Section 1631 of the Code of Civil Procedure provides that, on rendering his account, the executor may be examined on oath touching any property or effects of the decedent. The power of the court so to examine him, and to base the terms of its decree settling the account upon such examination, is not limited by the circumstance that no person interested in the estate has filed specific exceptions to which the examination is appropriate.

To hold that the executor should be entitled to the benefit of every credit to himself in his account, which is not specifically objected to by a party in interest, would be to deprive the court of its wholesome supervision over the accounts of executors and administrators; to encourage negligence and open the way for fraud. It seems to have been held in *Trotter's Case*, 40 Miss. 711, that the probate courts of that state "cannot command the conscience of an administrator, so as to compel him to conform his returns under oath to the views of the court." But, as we have seen, section 1631 of our code (Code of Civil Procedure) provides in terms that the

executor or administrator may "be examined." And in addition to what is said in *Estate of Moore*, 72 Cal. 335, and in *Estate of Herteman*, 73 Cal. 545, the power of the court to go behind an account, and its duty to require a full and fair account, was recognized in *Hirschfeld* v. *Cross*, 67 Cal. 662, and other decisions. In the case last-mentioned this court said: "The probate court is the guardian of the estates of deceased persons, and has control of the person appointed by it to administer the estate, subject to review as provided by law."

Even if it should be conceded that an account presented by an executor establishes its own correctness *prima facie*, the account should at least show on its face that a failure to collect a debt due to decedent was not the result of the negligence of the executor.

Every executor is chargeable with the whole of the estate of the decedent which may come into his possession, at the value of the appraisement contained in the inventory. (Code Civ. Proc., sec. 1613.) No executor is accountable for any debts due the decedent, "if it appears that they remain uncollected without his fault." (Code Civ. Proc., sec. 1615.) But if it do not so *appear to the court,* the executor must be held answerable for the amount of a debt due the decedent as appraised in the inventory. In the account herein presented, all that appears is, that the executor is debited with a balance of the Braly note uncollected, and that the executor is credited with the same balance; that is, that a portion of the Braly note was not collected. That fact, if taken as true, is not a statement that it remained uncollected "without fault" on the part of the executor. There is no presumption here as to the executor having done his duty. The presumption is, he could have collected the note in the absence of showing by his own averment, — *at least,* that a portion was not collected without any fault in him.

The Code of Civil Procedure provides that at the hearing for settlement "any person interested in the estate

may appear and file his exceptions in writing to the account, and may contest the same." (Sec. 1635.)

An exception may be taken to an account for that credits appear therein to which as matter of law the executor is not entitled; as if an executor shall attempt to set off, as against money or property of the estate which has passed into his hands, individual expenditures of his own, from which the estate could receive no benefit, and for which it was in no way responsible.

Here the contestants of the account of the executor objected that it appeared therefrom he had failed to charge himself therein with the whole of the principal and interest of the M. A. Braly note and mortgage. The exception called the attention of the court to the fact that by his account the executor sought to relieve himself of responsibility as to part of the Braly note, without any showing, even by entry in the credits that he had not been guilty of negligence. Moreover, the account is expressly excepted to "because it is not made to appear therein that the Braly note remained uncollected without the fault of said executor."

3. But appellant contends that the contestant of an account is *plaintiff;* that the exceptions in writing must be as fully and accurately drawn as a complaint in an ordinary civil action; that the account as presented must be taken and settled as correct in all respects except as to the specific exceptions taken to it; that at the trial of the contest no evidence is admissible, except such as supports, not only the attack upon the particular items referred to in the specifications, but the specific averments set forth in the specifications as grounds of objection to the particular items.

And appellant claims that under the allegations in the exceptions as to the Braly note, the court below should have allowed no testimony to prove that the executor had been guilty of negligence in failing to collect that note.

In New York the practice obtains of permitting objections to an account to be stated in the most general language, although the, surrogate may require them to be made more specific.  Under a general objection to any and all of the items, it was there held that the surrogate could inquire into and scrutinize the account, and was not bound by the executor's oath thereto, or by the vouchers produced by him; and in examining it, he could allow, for his information, any person to point out errors and defects therein.  (Redfield's Law and Practice in Surrogates' Courts, 2d ed., 672; *Peck* v. *Sherwood*, 56 N. Y. 615; *Buchan* v. *Rintoul*, 70 N. Y. 1.)

Appellant relies, in support of his contention, on sections 1713, 1714, 1715, and 1716 of the Code of Civil Procedure.

By sections 1713 and 1714, the provisions of part 2 of the Code — relating to proceedings in ordinary actions — do *not* constitute the rules of practice in probate proceedings when " it is otherwise provided "; and the provisions of part 2 — relating to new trials and appeals —are *not* applicable when " inconsistent " with the provisions of the title in which the sections are found.  A mode and manner of settling accounts of executors and administrators is specially provided, which, if followed, is inconsistent with the provisions relating to new trials.

An *appeal* from an order settling an account is expressly allowed within sixty days.   (Code Civ. Proc., secs. 963, 1715.)

The article and chapter referred to in section 1716 relate to contests of the probate of wills.  (Code Civ. Proc., sec. 1312.)  The suggestion of appellant is that the " exceptions," permitted by section 1635, constitute a complaint which may be demurred to on any of the grounds mentioned in section 630, and which, if sufficient in form, must be answered by the executor; that the issues made by such complaint and answer must, on the demand of either party, be tried by a jury; that judg-

ment must be entered against the party to whom the special verdict is adverse, together with *costs* in favor of the prevailing party.

That the procedure thus marked out is singularly inappropriate as a mode for settling an account, which it is the duty of the court of its own motion carefully to scrutinize, appears on saying it.

It may aid in ascertaining whether the legislature has required the procedure insisted upon, to look for a moment at the history of the laws with reference to the joinder of issues of fact in probate, and their trial.

April 23, 1855, the twentieth section of the act of May 1, 1851, "to regulate the settlement of estates of deceased," etc., was amended so as to provide: " If any person appears and contests a will, he shall file a statement in writing of the grounds of his opposition; when issues shall be joined in the probate court respecting the competency of the deceased to make a last will and testament, or respecting the execution by the deceased of such last will and testament, under restraint or undue influence, or fraudulent representations, or for any other cause affecting the validity of such will, such issue or issues shall, at the request of either of the parties interested, be certified immediately to the district court of the proper county for trial by jury. . . . . Upon the determination of such issue or issues of fact, the jury trying the same shall render a special verdict thereon, and the finding of the jury shall be certified by the district court to the probate court, whereupon the probate court shall proceed to admit such will to probate or not, according to the facts found and the law." (Stats. 1855, p. 132; compare sec. 1312, Code Civ. Proc.)

The original act of 1850 (Stats. 1850, p. 402, sec. 295) gave an appeal to the district court from certain orders of the probate court, including " all settlements of executors or administrators," and provided that, on filing the appeal papers, the district court should be

possessed of the cause, to re-examine the account anew. And the act of 1851 (pp. 486, 487, secs. 294, 298) attempted to give like appeals, and provided that the district court should try the matter anew. Neither act purported to declare that on such appeal, questions of fact arising upon a settlemeut of accounts should be tried by jury in the district court.

May 20, 1861 (Stats. 1861, p. 628), section 20 of the probate act of 1851, was again amended by providing that the issues of fact arising on the contest of a will, which might previously have been sent to the district court, should be tried in the probate court, and if so requested by a party in interest, by jury. Such is substantially the provision of the Code of Civil Procedure.

Thus it appears that, prior to the codes, there was no express provision of law requiring, nor any which could be construed to require by implication, that any issues of fact arising in the probate court should be tried by jury, except such as might arise upon the contest of the probate of wills. Are sections 1716 and 1717 to be read as commanding the proceedings set forth in section 1312, Code of Civil Procedure, and those which immediately follow it, to be resorted to whenever an account is contested?

In the *Estate of Moore, supra,* the question was fully considered and discussed by Justice Temple, and the question above stated was answered in the negative.

The court there held that sections 1716 and 1717 " should not be construed as granting an absolute right to a jury trial in cases in which, according to the course of the common law, a jury trial was denied as inappropriate, and especially upon the settlement of the accounts of administrators and executors, where so much is left to the mere discretion of the judge, and in the face of the language of the code, in many sections, implying that the settlement shall be by the court. (Code

Civ. Proc., secs. 1636–1638.)"    (See also the remarks of McFarland, J., in *Estate of Herteman, supra.*)

There may be a manifest propriety in requiring, at the request of a party, issues of fact such as ordinarily arise in the contest of the probate of a will (Was the testator of unsound mind?   Was he subjected to undue influence?) to be tried by a jury.   But the proceeding in probate for the settlement of an account is *sui generis*, bearing but a distant and incomplete analogy to the procedure for an accounting in equity.   The executor or administrator derives his power to act as such from the will, or order of the court; but in his conduct of the affairs of the estate he is subjected largely to the discretion and control of the court.   The court is bound to protect the estate, and, as far as may be, the rights of all concerned.   Publication is had, that all interested may have an opportunity, by written exceptions, to call the attention of the court to alleged errors or defects; but, in the absence of exceptions, the court may and should inquire into any matter which may seem to the court objectionable, and pass judgment thereon; and in the presence of specific objections, the court is not limited to the specific objections.

A special verdict must pass on all the issues by presenting the conclusions of fact bearing on all.   (Code Civ. Proc., sec. 624.)   Section 1314, relating to contests of wills, provides that the jury must return a special verdict "upon the issues submitted to them by the court," upon which the judgment of the court must be rendered. For many years, it has been the practice in this state, when a special verdict is desired, to cause to be prepared and submitted to the jury special issues,— usually in the form of questions, — and it would seem that this practice is recognized by the legislature by the words "the issues submitted to them by the court."   In cases of contests of a will, the issues must be such as that the determination of them will leave to the court no office

except to enter a judgment admitting the will to probate or rejecting it.   (Sec. 1314.)

But if, as claimed by appellant, when an account is contested, the trial and evidence must be confined to the particular items excepted to, and to the grounds of exceptions thereto, no judgment settling the account can be based on a special verdict of a jury *alone,* unless all of the items of the account are excepted to.   This strengthens the presumption that the statute does not require that a contest of an account must be submitted to a jury on the demand of a party in interest.

Even if it should be conceded that there are any issues of fact, other than those arising on the contest of wills, which, on demand, must be submitted to a jury in conformity to the requirements of the code as to such contests, they must at least be like—of the same kind as— those joined in contests of wills, and like those which by the former statutes were directed to be sent to the district court for trial.   It would seem that they must be such, the verdict whereon would be determinative of an order or judgment to be entered by the court, and not merely determinative of subordinate facts which may be considered by the court in connection with other facts in making its order or judgment.

We are clearly of opinion that exceptions to an account do not create "issues of fact joined," such as must be submitted to a jury on demand of a party in interest.

The language of section 1635 does not of itself require the elaborate procedure provided for in sections 1312–1314.   No time is given the executor to prepare to meet or to answer the exceptions; although doubtless, in proper cases, the court may grant him time to secure further evidence in support of his account as rendered. On the day appointed, or on *any subsequent day* to which the hearing may be postponed, any party in interest may "contest the account."   True, his exceptions must be in writing, but this may well be that the point of his objec-

tions shall be made clearly to appear to the court. It is proper, and we believe it has been the practice, to extend to contestants the widest latitude in amending and supplementing their exceptions. What, then, is the purpose of section 1635?

To us it appears the object is, that all interested may inspect, and if it is desired object to, the account. But it is the duty of the court carefully to scruntize the account, and to reject all claims of the executor illegal in themselves or unjust in fact. The court might perhaps overlook particular objections which were not called to its attention; and the exceptions are permitted in aid of the court when performing its duty of making the account correct. It was not intended to deprive the court of its power to supervise in every particular the accounts of executors and administrators, a power conferred for the protection of all interested, including infants, and oftentimes adults ignorant of their rights.

The only point decided in *Boughton* v. *Flint*, 74 N. Y. 485, was that an *auditor*, to whom objections to an account were referred by the surrogate, must confine the inquiry before him within the limits of the reference.

4. It is said by appellant that the evidence would not support a finding of such negligence on his part, with respect to the Braly note, as should render him liable for the balance thereof uncollected. But even if the testimony of the appellant tends to prove an excuse for his neglect, for the reason that he was not specifically advised by the attorney Fabens of the necessity of commencing an action to foreclose the mortgage, the testimony of Weeks was to the effect that the attention of appellant was called to the fact that the Braly note would "outlaw" in a few weeks, and that appellant did know of the consequences of the running of the statutory limitation. It was for the court below to determine the credibility of the several witnesses.

5. It is insisted, however, that even if the appellant

was guilty of negligence, his co-executor Weeks was also liable for negligence in the said matter; that their liability was joint, and the devisees having *released* Weeks from all liability as executor, unconditionally, appellant was thereby discharged from liability.

Appellant urges that any negligence on the part of the executors constituted a *tort*, and as there can be but one satisfaction of a tort, the release of one of them released both.   But for a neglect of their duty as trustees, they were liable as for a breach of the contract obligations they took upon themselves as executors.    Appellant claims that if the executors were joint debtors, the release of one released the other.

The obligations of co-executors arise from their contract, and are several.   Although one may in some cases make himself liable by placing the other in a position to do wrong, or by aiding him in his acts or misfeasances, the liability is still the several liability of each.   And this is so, even if it be conceded the devisees or legatees may under some circumstances claim both to be liable.

Whether the executor Weeks was guilty of negligence in not taking more active measures to enforce the collection of the Braly note and mortgage, which was in the possession of the appellant, was to be determined by the evidence below, and in reviewing the evidence we must assume the testimony of Weeks to be true.

At common law, executors were generally liable for their own acts, and not for the acts of their co-executors. Each executor had an independent right over the personal property of his testator; he might sell it and receive the purchase-money, and give receipts in his own name.   There were, indeed, cases in which both of the executors were made severally — perhaps jointly and severally — liable.   "If an executor does any act to transfer the property into the exclusive control of the co-executor, and thus enables his co-executor to misapply the same, he will be liable; as, if he joins in drawing or indorsing

a bill or note, or delivers or assigns securities to his co-executors *to enable him to receive the money alone*, or if he gives him a power of attorney, or does any other act that enables his co-executor to misapply the money; and so it was held 'that if, by agreement between the executors, one to receive and intermeddle with such a part of the estate and the other with such a part, *each of them* will be chargeable with the whole, because the receipts of each are pursuant to the agreement made betwixt both.' Probably the case *would not now be followed*, but it illustrates the principle." (Perry on Trusts, secs. 421, 422, and cases cited in notes.)

And so if an executor stands by and sees a breach of trust committed, or about to be committed, by a co-executor, and does nothing to protect the estate or to call the defaulting executor to account, he is liable.

But a neglect to collect a debt which might, with proper exertion, be collected, is a *devastavit* (Bouvier), and a *devastavit* by one of two executors shall not charge his companion, provided he has not intentionally or otherwise contributed to it. For the testator's having misplaced his confidence in one shall not operate to the prejudice of the other. (Cro. Eliz. 319; Williams on Executors, bottom page, 1820.) In the American note to the same page are collected many decisions in this country to the effect that where one executor merely permits his co-executor to take possession of assets without going further, and *concurring in a misapplication of them*, he does not render himself responsible for the receipts of his co-executor.

The extent of the liability of one executor for the acts of his co-executor will depend very much upon the circumstances of each case. (*Fonte* v. *Harton*, 36 Miss. 350; *Noland* v. *Calvit*, 20 Miss. 273; *Clarke* v. *Blount*, 2 Dev. Eq. 51.) In the case before us the note and mortgage were in the exclusive possession of the appellant, and we cannot say the co-executor failed in reasonable diligence

when he relied upon the positive statements of appellant that he knew all about the matter, and that there was plenty of time to attend to the collection of the Braly note. Such was the effect of his declarations.

It has sometimes been broadly stated that if an executor turn over assets which he has received to his co-executor, he becomes responsible for the due application and administration of those assets by his co-executor.

Here the instrument signed and not sealed by the devisees amounts to a promise not to call the executor Weeks to an accounting, and a consent that an order settling his account might be entered in the probate court without notice to them. The language of the writing clearly indicates it was intended as a contract not to seek legal redress as against Weeks. If the consideration for the promise of the devisees appeared to be the payment in whole or in part of the debt due from the Braly estate, the appellant would be entitled to a credit for the sum so paid. This, because it *was* paid; but it remained for appellant to show the fact.

When the executors give a joint and several bond, the effect is to make them jointly and severally liable, *on such bond*, for the misconduct of each. (Williams on Executors, 1820, note *y.*) Here the will provided that the executors should not give bond, and so far as appears none was given.

By our statute, when two or more persons are appointed executors or administrators, the superior court must require a separate bond from each of them. (Code Civ. Proc., sec. 1391.) Each is chargeable in his account with the whole of the estate which may come into his hands. (Code Civ. Proc., sec. 1613.) When an executor is guilty of neglect with reference to assets in the possession of his co-executor, he is not made liable upon the theory that the assets are in the possession of both, which, in fact, they are not, but upon his neglect in delivering them to his co-executor without good cause,

or in not seeing to it that they were taken out of the possession of the co-executor, or were not by him misapplied or lost.

Even if it should be conceded that Weeks could at the option of the devisees be charged with the part of the Braly note uncollected, by reason of his neglect in not taking measures to cause it to be collected, it would not follow that the *appellant*, who had the note in his possession, could assert the agreement styled a "release" as a release to him.    Co-executors are not liable to each other, but each is liable to the *cestuis que trust* to the full extent of the fund he receives.    (*Edmonds* v. *Crenshaw*, 14 Pet. 166.)    As between the executors herein, the primary and principal obligation was on appellant to account for the note and mortgage which was in his possession. We know of no principle by which Weeks could be held to contribute toward any sum appellant might have to pay as a consequence of his failure to collect the Braly note. The appellant, therefore, could have lost no right to contribution by the arrangement between Weeks and the devisees.

6. On the 26th of February, 1869, the appellant exchanged five hundred dollars in currency—the property of the estate—for three hundred and seventy dollars in gold.    The court below directed the appellant to charge himself with the former instead of the latter sum. There is no dispute but that the three hundred and seventy dollars were paid to satisfy a coin debt due from the estate, or that the five hundred dollars "currency" were then worth three hundred and seventy dollars in gold.    The transaction is treated by counsel as a "sale," but we think that is hardly the term to apply to the exchange of one currency for another.    We take notice that coin was always treated as the standard of value in this state, and was so recognized by our legislation.    If the executor had paid the gold debt with five hundred dollars in greenbacks, the transaction would not have

been refused the approval of the probate court for that reason alone. If, indeed, he had gold at his disposal, he should have paid the debt in gold. But if he had not, any sale of property he might have made would have produced either "currency" or a proportional less amount in gold. It is suggested he should at once have proceeded to collect the Braly note. But although the appellant was properly held liable for the Braly note, the question whether he used a reasonable discretion in changing the paper currency into gold is to be determined by the conditions existing when it was done. The Braly note bore interest at the rate of one per cent. a month, and had several months yet to run. The appellant may reasonably have believed it was for the interest of the estate to dispose of the greenbacks rather than to bring the foreclosure suit, which might be pending a considerable period of time before decree. The court erred in compelling him to account for more than the three hundred and seventy dollars.

7. Considering the great delay of appellant in accounting, we cannot say the superior court was not justified in charging the appellant with legal interest upon balances with annual rests.

8. It is claimed by appellant that the right of respondents to demand an accounting was barred by the statute of limitations, and that by their laches they had lost their right to call the executor to an account.

From the expiration of the time mentioned in the notice to creditors, it was the duty of the executor to account. His obligation to account was continuous, and he cannot claim that his failure to do so at any moment of time set the statute in motion, or cast upon the respondents the duty to demand an accounting; since their right to demand it ran with his duty, and could be asserted so long as his duty remained unperformed. There is no express provision of our law with respect to the limitations of actions which applies to the case, and

we discover in the record no such laches as a court of equity will sometimes consider sufficient reason for dismissing an appeal to its jurisdiction.

It cannot be claimed that the devisees and legatees consented that the executor should be relieved of his duty to account as such, and that the estate should remain open and unsettled. If any unfavorable consequences may be supposed to have been suffered by appellant by reason of the insolvency of his co-executor, he could have avoided them by more prompt action on his part; but such insolvency could not relieve him of the burden of accounting for the property of the estate in his possession. He did not and could not "repudiate his trust" entirely by his mere failure to account. He failed to perform a specific duty which still continued imposed upon him until his accounts were settled.

9. It is claimed by *respondent* that the order entitled in the transcript "order settling and correcting account" is not appealable, because *not* an order settling an account. But while informal, we think the order that the account, " be and the same is hereby allowed and approved, except as to the matters following," etc., is an order settling the account. It directs the executor to charge himself in the account with certain sums, and approves of the account as rendered in other respects. There remained only the clerical duty of making the account conform to the order. (*Estate of Miner*, 46 Cal. 564.)

The order appealed from is modified by striking therefrom the words, "The said executor is directed to charge himself in said account with the sum of five hundred dollars, as of the 26th of February, 1869, instead of the sum of three hundred and seventy dollars, ' amt. rec'd sale of five hundred dollars currency found on R. A. Sanderson's body, at seventy-four cents ' "; and the order appealed from is in all other respects affirmed.

SEARLS, C. J., TEMPLE, J., McFARLAND, J., PATERSON, J., THORNTON, J., and SHARPSTEIN, J., concurred.