## ANGLO-CALIFORNIAN BANK *v.* AMES.

(*Circuit Court, D. Nebraska.* June 7, 1886.)

1. INSANE PERSONS—ACT OF LUNATIC—ESTOPPEL.

One who is disabled by want of mental capacity to act, cannot be estopped to deny that he has acted. An estoppel creates no power, and while, in favor of a *bona fide* purchaser of negotiable paper, inquiry is denied as to equities between prior parties, yet such protection does not cut off inquiry into the contractual capacity of those parties.

2. SAME—CERTIFICATE OF DEPOSIT—INDORSEMENT BY LUNATIC—INNOCENT PURCHASER.

The indorsement of a certificate of deposit by the insane person, in whose favor it was drawn, carries no title, even to an innocent purchaser.

At Law.

*J. W. Savage* and *Dwight Hull,* for plaintiff.

*J. L. Webster,* for defendant,

BREWER, J. This was an action on a certificate of deposit. It was tried by a jury, and a special verdict returned. The plaintiff claims as a *bona fide* purchaser of the paper. The bank, maker of the certificate, brought the money into court, and left the issues to be tried between the plaintiff and the defendant, Ames, the payee and indorser of the certificate. The jury found that Ames at the time of the indorsement was of unsound mind, and did not know what he was doing;

that the indorsement was obtained by fraud and deception; and that Ames received no consideration therefor. Of these facts the bank was ignorant when it purchased.

The question, therefore, is between a lunatic and an innocent purchaser of his paper. How far the contract of a lunatic, not as yet under guardianship, can be enforced, may not be clearly settled. When full consideration has been given, and the contract made in good faith, the mental infirmity has often been disregarded, and the contract enforced. Yet, obviously, on principle, any promise of such a person lacks the essential element of a contract, to-wit, assent. As said by the supreme court in *Dexter* v. *Hall*, 15 Wall. 20:

"Looking at the subject in the light of reason, it is difficult to perceive how one incapable of understanding or acting in the ordinary affairs of life can make an instrument the efficacy of which consists in the fact that it expresses his intention, or, more properly, his mental conclusions. The fundamental idea of a contract is that it requires the assent of two minds, but a lunatic, or a person *non compos mentis*, has nothing which the law recognizes as a mind, and it would seem, therefore, on principle, that he cannot make a contract which may have any efficacy as such."

One great difficulty in this class of cases lies in our lack of ability to distinguish difference of mental condition and the paucity of language to accurately describe such differences. Between him whose mental faculties seem all unbalanced,—in whose chambers of thought chaos reigns supreme, "confusion worse confounded,"—and him but a single wheel of whose mental mechanism is out of gear, there is a world-wide difference, and yet both are classed as persons of unsound mind. We determine one's mental condition only from his words and acts; yet often how difficult it is to look through the outer life to the inner soul? The craziest reason correctly—speak and act sensibly—upon some subjects; while there are others so many of whose mental processes are rational, and so few unbalanced and in confusion, that we hesitate to declare them incapable of self-control, and irresponsible for their actions and contracts. Is it strange, in respect to such a person, that when every thing seems to have been fairly done, and a full consideration passed, the courts have spoken lightly of the mental infirmities, and upheld the contract? On the other hand, when gross injustice has been done,—especially when the mental incapacity is obvious and pronounced,—the inclination has been to denounce the wrong, and protect the unfortunate imbecile from the rapacity of the willful spoiler. Such is this case. The defendant was of unsound mind. He received nothing. He knew not what he was doing. His contract was obtained by fraud and deception. There is not a single feature which would give the slightest excuse for upholding the transaction as between the immediate parties.

Does the plaintiff, as a *bona fide* purchaser, occupy any better position than the wrong-doer from whom it purchased? Doubtless, it is entitled to all the protection given to such a purchaser of negotiable paper; but such protection does not extend to an indorsement like this.

There was no valid contract of indorsement created by defendant's signature on the back of the paper. It was no better than a signature written in a state of somnambulism, or even than a forgery. No negligence is imputable, for one who is incapable of prudence cannot be guilty of negligence; nor can there be an estoppel. He who is legally disabled to act, cannot be estopped from denying that he has acted. An estoppel creates no power; and while, in favor of *a bona fide* purchaser, inquiry is denied as to equities between prior parties, yet such protection does not cut off inquiry into the contractual capacity of those parties. Such, at least, is the better doctrine, although it must be conceded that there are authorities to the contrary, especially in the English courts.

The case of *Wirebach* v. *First Nat. Bank*, 97 Pa. St. 543, is a late case, in which this subject received consideration. In it we find this language:

"The question now presented is, will an action lie on the accommodation indorsement of a promissory note by a lunatic? If the determination of this was not made, it was clearly indicated, in *Moore* v. *Hershey*, 9 Norris, 196. There the action was by an indorsee against the maker of a promissory note, and evidence was offered to prove that the maker had received no consideration for the note; which fact the plaintiff had admitted in conversation, proof having been made that the maker was insane. But the offer was rejected, the court below ruling that as the note in suit was commercial paper, and the plaintiff a holder for value, the consideration could not be inquired into. This was held to be error. PAXSON, J., said:

"'We place our ruling upon the broad ground that the principle of commercial law above referred to does not apply to commercial paper made by madmen. * * * The true rule applicable to such cases is that while the purchaser of a promissory note is not bound to inquire into its consideration, he is affected by the *status* of the maker, as in the case of a married woman or a minor. In neither of these cases can he recover against the maker. In the case of a lunatic, however, he may recover, provided he had no knowledge of the lunacy, and the note was obtained without fraud, and upon a proper consideration. There must be a limit to the civil responsibility of persons of unsound mind: otherwise, their property would be at the mercy of unscrupulous and designing men. If the holder could recover against one who was insane when he indorsed or made the note without consideration therefor, no wider door could be opened for the swindler to despoil such helpless persons of their estates. An infant who makes or indorses a note may, by his representative, plead his infancy as a complete defense. In like manner a lunatic may plead insanity and want of consideration. The consideration respects himself, not the holder who may have given value to the indorser. If the fact that the holder had paid value were enough, the lunatic could not defend for fraud upon him, or for want of consideration. Then an innocent holder could recover, though the judgment would sweep away the lunatic's entire estate, and he had not been benefited a farthing; nor would a nominal sum be sufficient. It is said that the law protects those who cannot protect themselves; but it would be sorry protection if one holding a valid note against a helpless man for four thousand dollars, could get it renewed for ten thousand dollars, and recover the full amount of the renewal note.'"

*McClain* v. *Davis*, 77 Ind. 419, was a case where a promissory note was obtained from an insane man to cure him of a disease, as in the

case at bar. The note came into the hands of a bank, for value, without notice. The court say:

"There was nothing received in consideration of the contract under consideration of which it can be said that restitution should be made before a disaffirmance should be permitted; and it is no objection that the note had passed, before maturity, into the hands of an indorsee. Commercial paper is not an exception to the rule which permits a disaffirmance by any one who was of unsound mind at the time of becoming a party thereto. The purchaser of such paper takes with constructive notice of all legal disabilities of the party,—such as infancy, coverture, and unsoundness of mind. 1 Pars. Notes & Bills, pp. 149, 150; Edw. Bills, pp. 63–69."

See, also, 1 Daniel, Neg. Inst. § 210, in which the author says:

"No matter how perfect the note may be in form, it would be void in the hands of every person, however innocent, as against the imbecile or lunatic." See, also, *Burke* v. *Allen*, 29 N. H. 106.

I think judgment should be entered on the special verdict in favor of the defendant.