[L. A. No. 9094. In Bank.—February 27, 1929.]

HELLMAN COMMERCIAL TRUST AND SAVINGS BANK, Appellant, v. LENA ALDEN, as Administratrix, etc., Respondent.

Page, Nolan, Rohe & Hurt, Henry S. Dottenheim and Rohe & Freston for Appellant.

Thomas B. Leeper for Respondent.

Jennings & Belcher, *Amici Curiae.*

CURTIS, J.—On January 15, 1919, a petition was filed in the superior court of the county of Sacramento to have W. L. Bundy declared· an incompetent person, and for the appointment of a guardian of his person and estate. Upon due notice to the said W. L. Bundy and after proceedings duly had, said court on or about the sixth day of March, 1919, made and entered its judgment adjudging that said W. L. Bundy was, on the fifteenth day of January, 1919, and for a long time prior thereto had been and was at the date thereof, by reason of old age and weakness of mind, unable unassisted to properly care for himself or his property and by reason thereof was likely to be im-

posed upon by designing and artful persons, and appointing M. P. Barnes guardian of his person and estate. On March 18, 1919, Barnes qualified as such guardian and remained such until the death of said W. L. Bundy. The day after the order adjudicating Bundy incompetent, that is, on the seventh day of March, 1919, the Security Trust and Savings Bank of Los Angeles for a valuable consideration issued and delivered to Bundy a cashier's check for the sum of $10,000. Said check was signed by the cashier of said bank and was made payable to the order of the said W. L. Bundy. Thereafter W. L. Bundy appealed from the order adjudicating him to be an incompetent person. On August 5, 1919, and after taking said appeal Bundy wrote his name on the back of said cashier's check and delivered the same, without receiving anything of value therefor, to Kolts & Stearns, who indorsed and del'vered said cashier's check to the plaintiff herein, the Hellman Commercial Trust and Savings Bank. In consideration thereof the plaintiff gave said firm of Kolts & Stearns a credit of $10,000 upon their account with said bank, and thereafter and before the check was presented for payment to the Security Trust and Savings Bank said plaintiff permitted the sum of $5,000 to be checked out of said account by said firm of Kolts & Stearns. The following day during regular banking hours said check, indorsed by plaintiff, was presented for payment to the Security Trust and Savings Bank, and payment was refused. Thereupon the Hellman Commercial Trust and Savings Bank brought suit to recover the sum of $5,000 against the Security Trust and Savings Bank, W. L. Bundy and Kolts & Stearns, a copartnership. An answer to the complaint in said action was interposed by M. P. Barnes, as guardian of the person and estate of W. L. Bundy, an incompetent person. Thereafter the court, upon the application of the Security Trust and Savings Bank purporting to act under section 386 of the Code of Civil Procedure, made its order substituting M. P. Barnes as guardian of the person and estate of W. L. Bundy, an incompetent person, in the place and stead of the Security Trust and Savings Bank; that plaintiff be permitted to amend its complaint by asking for judgment for $10,000 and interest instead of $5,000; that the Security Trust and Savings Bank deposit the sum

of $10,023.24, the amount of said cashier's check with interest, with the clerk of said court, and that upon such deposit it be discharged from further liability. Thereupon and on September 15, 1919, the plaintiff filed an amended complaint in which it asked for judgment in the sum of $10,000 and interest against W. L. Bundy, Kolts & Stearns, a copartnership, Greeley Kolts and B. J. Stearns (the two last-named defendants being the individuals composing such copartnership). The Security Trust and Savings Bank was not made a party defendant in this amended complaint and in the prayer thereof no judgment was asked for against said bank.

On February 8, 1920, W. L. Bundy died, and on November 4, 1921, Lena Alden was appointed administratrix of his estate. Thereafter, and on August 1, 1923, by leave of court first had, the plaintiff filed what it designated as "Amended and Supplementary Complaint on Cashier's Check." The persons made party defendants in said pleadings were "Lena Alden, as administratrix of the estate of W. L. Bundy, deceased, Greeley Kolts, B. J. Stearns and Kolts & Stearns, a copartnership." Judgment against these defendants was asked in the sum of $10,000 and interest. These defendants made separate answers to this amended and supplemental pleading and the action came on for trial, as recited in the findings "upon the issues raised by the plaintiff's amended and supplemental complaint and the answers thereto of the defendants." In the answer of defendant Lena Alden, as administratrix, besides making denial of certain allegations in plaintiff's amended and supplemental complaint, she set forth certain affirmative matters and in the prayer to her answer, among other things, she asked that she have judgment for the amount of money deposited in court. The trial court found the facts as hereinbefore set forth, and held that plaintiff could not recover any part of said fund for the reason that the judgment of incompetency against Bundy was in full force and effect at the time of his indorsement of said check, but that plaintiff was entitled to judgment against Kolts & Stearns for the amount of money drawn out by them from the plaintiff Bank, after the deposit of said check by them with plaintiff. The judgment as rendered by the trial court was in favor of the plaintiff and

against the defendants Greeley Kolts and B. J. Stearns for the sum of $5,000 and interest and costs of suit, "that plaintiff take nothing by this action as against the defendant Lena Alden, as administratrix of the estate of W. L. Bundy, deceased; that said defendant Lena Alden, as administratrix of the estate of W. L. Bundy, deceased, do have and recover of and from the plaintiff her cost of suit, hereby taxed at $2; that there be paid to said defendant, Lena Alden, as administratrix of the estate of W. L. Bundy, deceased, the moneys deposited in court in the above entitled action by the Security Trust and Savings Bank, with the interest accrued thereon by reason of the deposit thereof in the Pacific-Southwest Trust & Savings Bank." The plaintiff has appealed, but only from that part of said judgment in favor of the defendant Lena Alden, as administratrix of the estate of W. L. Bundy, deceased, and being the portion of said judgment just quoted. The appeal is before us on the judgment-roll alone. Long prior to the trial of this action, the appeal of Bundy from the order adjudicating him to be an incompetent person, and appointing a guardian of his person and estate, had been decided adversely to Bundy, and said order affirmed. The date of the decision affirming said order was November 28, 1919. (*In re Bundy*, 44 Cal. App. 466 [186 Pac. 811].) The trial of the present action was held in December, 1924.

On this appeal the contentions of appellant may be stated as follows:

1. Appellant is entitled to judgment against the Security Bank upon the warranty of said bank as to Bundy's capacity to indorse said check at the time the same was made and delivered to him by said bank.

2. If the Security Bank was legally discharged from its liability to appellant, still appellant may press its claim against said fund based upon the liability originally incurred by the Security Bank.

3. That the judgment is not supported by the findings for the reason that the court failed to determine that Bundy was incompetent, or that he did not comprehend the nature or effect of the indorsement and transfer of the check, or that the transaction was void.

*First.* Plaintiff relies upon the provisions of section 3142 of the Civil Code in support of its claim that

the Security Bank was originally liable to it on said cashier's check. This section of the code provides that the maker of a negotiable instrument "admits the existence of the payee and his then capacity to endorse." It is appellant's contention that by issuing said cashier's check to Bundy the Security Bank guaranteed or warranted that Bundy at the time of the issuance thereof had the legal capacity to indorse said check; that this was a continuing guaranty and was in full force and effect up to and including the time of the indorsement of said check by Bundy and the delivery thereof by him to Kolts & Stearns and that if Bundy was incompetent at the time of such indorsement then the Security Bank was liable on its said guaranty and warranty to appellant. As we have already stated, the trial court by its order discharged the Security Bank from all liability to either the appellant or the Bundy estate. Appellant now contends that the trial court erred in ordering the discharge of the Security Bank. Assuming the above contentions of appellant to be well taken, we are of the opinion that the appellant is now in no position to avail itself of this error. While the record may not show that the appellant expressly consented to said order of substitution, as claimed by respondent, it does show, we think, conclusively that by its subsequent acts appellant voluntarily complied with the terms of said order and expressly waived its claim against the Security Bank by omitting it in all its subsequent pleadings as a party defendant to this action. It is recited in this order of substitution that the plaintiff asked leave to amend its complaint by praying for the whole sum of $10,000, represented by said check, instead of $5,000, the amount for which it asked judgment in its original complaint. After ordering the substitution of Barnes, as guardian, as a defendant in the place of the Security Bank, the order proceeds: "that upon amendment of the complaint by the plaintiff by such substitution of defendants and by claiming the full amount of said check, $10,000.00 with interest . . . " that the bank deposit in court the amount thereof with accrued interest and that upon such deposit it be discharged from further liability to any of the parties to the action. Three days thereafter and on September 15, 1919, the plaintiff did so amend its complaint

so as to conform to said order of court and by the prayer of said amended complaint, judgment was asked for the full amount of said check against all of the parties who were originally made defendants in said action, except the Security Bank. Still later appellant filed its amended and supplemental complaint and again the Security Bank was entirely omitted therefrom as a party to this action. It is clear from the foregoing that the appellant, if it did not expressly consent to the order substituting the Bundy estate as a defendant in the place and stead of the Security Bank at the time of the making thereof, did thereafter not only acquiesce in said order of substitution, but so amended its pleadings as to make effective said order, and from that date on in all of its pleadings it omitted the Security Bank as a party defendant to this action. ■ It is well settled that a party cannot prosecute an appeal from an order after a voluntary compliance with its terms and provisions (*Buckeye Refining Co.* v. *Kelly,* 163 Cal. 8 [124 Pac. 536]; *Bank of Martinez* v. *Jahn,* 104 Cal. 238 [38 Pac. 41]). We think there is little question but that the order of substitution might have been reviewed on an appeal from the judgment (*Camp* v. *Oakland Mortgage & Finance Co.,* 205 Cal. 380 [270 Pac. 685]) except for the subsequent action of appellant in acquiescing in said order and conforming to the requirements thereof. The Security Bank having been discharged from all liability to the parties to this action by said order, no judgment could thereafter be legally entered against it.

■ *Second.* But appellant makes the further contention that even if the Security Bank was legally discharged from all liability to all of the parties to this action, nevertheless appellant still has the right to prosecute its claim to the fund deposited in court on the independent liability to appellant incurred by the Security Bank in the issuing of said cashier's check whereby it admitted the capacity of Bundy, the payee therein named, to indorse the same. In other words, the appellant contends that when the court substituted the Bundy estate as a defendant in the place of the Security Bank it did not deprive the appellant of its right to recover upon the cause of action alleged in the complaint precisely as though the Security Bank were still a party defendant to the action. We find no authority to

support this contention and in our opinion it is without merit. ■ The purpose of a proceeding in interpleader is twofold. First, to determine the liability of the person in possession of the fund or property which is the subject of the contest. If it be determined that he is a mere stakeholder and has no interest in the property involved, and has not incurred any independent liability to either or any of the other parties to the action he is discharged as a party to the action by depositing the fund or other property in court. After this has been done the then remaining parties to the action litigate among themselves as to their respective claims to the fund or property which has been deposited in court (*San Francisco Sav. Union* v. *Long,* 123 Cal. 107 [55 Pac. 708]). The present proceeding, although prosecuted in pursuance of the provisions of section 386 of the Code of Civil Procedure, is not strictly speaking an action of interpleader. It was instituted by the appellant, one of the persons making claim to the fund in dispute against the Security Bank, who had possession of said fund. The Security Bank then applied under the provisions of the first sentence of said section, which in no way relates to actions of interpleader, for an order substituting in its place as defendant in said action M. P. Barnes, guardian of the estate of W. L. Bundy, an incompetent person, who also made claim to said fund. The court granted its application and made the necessary order. From there on the proceeding was between the contesting claimants to the fund deposited in court, and would be governed by the same rules that apply to actions of interpleader. As stated above, "the then remaining parties to the action litigate among themselves as to their respective rights to the fund or property which has been deposited in court." The fund in this instance was the $10,000 and accrued interest, originally due from the Security Bank on its cashier's check issued to Bundy. It is conceded that if Bundy at the time he indorsed this check to Kolts & Stearns was mentally incompetent to manage his affairs, and therefore had not the capacity to indorse said check, the appellant acquired no right to said check or the money it represented and neither Bundy nor his estate thereby lost any right to said check or the money it represented by reason of the attempted indorsement and transfer

thereof by Bundy. On the other hand, if Bundy at said time was possessed of the requisite mentality to make a legal indorsement of said check, then his act of indorsement bound him and his estate in so far as the rights of the appellant were involved, and appellant had the right to recover said fund, or at least a portion thereof equal to the amount it paid Kolts & Stearns, on the strength of the indorsement of Bundy. This is the only condition under which it can recover any part of said fund. The liability of the Security Bank to appellant incurred by reason of any undertaking on its part, implied or express, that Bundy had the mental capacity to make a legal indorsement of said check, would not give to appellant any right to recover any part of said fund. This right of action was against the Security Bank, not for the whole or any portion of said fund, but was simply a right to recover a personal judgment against the bank, and it would be entitled to recover said judgment, if said liability existed, even though the bank would have been required to pay to the Bundy estate the full amount of said check by reason of Bundy's mental incompetency at the time said check was issued. The appellant, therefore, after the order of court discharging the Security Bank as a party to this action had no legal right, in its effort to recover said fund or any portion thereof, to rely upon its original claim against the Security Bank on the latter's alleged liability to appellant by reason of its issuance of said check, nor was the burden of defending said fund against the claim of appellant, based upon the independent liability of the Security Bank to appellant, cast upon the Bundy estate by said order of substitution. This is so for the reason, as we have just stated, the establishment by appellant of its claim against the Security Bank on the latter's alleged independent liability to the appellant, would not show any right in appellant to said fund or any part thereof. In fact, appellant could only recover on its claim against the bank in case Bundy were found incompetent, and if Bundy were found incompetent then the Bundy estate would be entitled to the whole of the fund. The only issue between appellant and the Bundy estate was as to the state of Bundy's mind at the time he indorsed the check. If Bundy were incompetent then his estate lost nothing

by his indorsement and would, of course, be entitled to all of said fund. If he were competent then the estate would be bound by his indorsement and the appellant could recover against the fund. It was this issue and this issue only that was submitted for decision after the court, acting under the provisions of said section 386, dismissed the Security Bank, and substituted the Bundy estate as a party to the action in place of the bank.

*Third.* The third contention of appellant is that the judgment is not supported by the findings for the reason that the court failed to determine that Bundy was incompetent, or that he did not comprehend the nature or effect of the indorsement and transfer of the check or that the transaction was void. This same contention was made by appellant before the district court of appeal when this action was before that court.

In an opinion written by *pro tem.* Justice Thompson, concurred in by Presiding Justice Koford and Justice Nourse, the legal questions arising out of this contention of appellant were fully considered by the members of said court. We are in agreement with the views therein expressed and with the conclusion reached by said court. We accordingly adopt that part of said opinion of the district court of appeal which gives consideration to these questions as the opinion of this court, which is as follows:

"The court failed to specifically find that the incompetent lacked understanding of the nature or effect of the endorsement and transfer of the check in question, or that the transaction was void. But the court did find that 'W. L. Bundy received nothing of value for his endorsement of said check,' and that, 'about the 6th day of March, 1919, said court made and entered its judgment, adjudging that the said W. L. Bundy was, on the 15th day of January, 1919, and for a long time prior thereto had been, and was at the time of said hearing, by reason of old age and weakness of mind, unable, unassisted, to properly care for himself or his property, and by reason thereof was likely to be imposed upon by designing and artful persons.' The court further found that a guardian of the person and estate of said incompetent was thereupon appointed and duly qualified; that an appeal from said adjudication of incompetency was perfected, and that the judgment was

affirmed by the District Court of Appeal on January 26, 1920. The respondent elected to rest her claim of the invalidity of the endorsement and transfer of the check in question solely upon a finding that an adjudication of incompetency had been duly made and was in force at the time of the transfer of the check. Ordinarily a finding to the effect that one is unable, unassisted, to properly care for himself or his property, by reason of old age or weakness of mind, will not warrant the conclusion that a specific contract is therefore void for lack of mental capacity. In the absence of an adjudication of incompetency, it is necessary to allege and prove that the transaction was void for lack of understanding of its nature and effect. In the case of *Carr* v. *Sacramento C. P. Co.*, 35 Cal. App. 439, 442 [170 Pac. 446], the late Justice Burnett said: ' . . . the test is: Was the party mentally competent to deal with the subject before him with a full understanding of his rights? (*Union Pacific Ry. Co.* v. *Harris*, 158 U. S. 326 [39 L. Ed. 1003, 15 Sup. Ct. Rep. 843, see, also, Rose's U. S. Notes].) Did he actually understand the nature, purpose, and effect of the contract?' One may be incompetent to some extent and yet have sufficient mentality to comprehend the nature and effect of a transaction and therefore execute a valid contract. An 'unsound mind' has been defined by the Standard Dictionary to include one which is weak, diseased, abnormal or defective. It is equivalent to the term *non compos mentis*, which includes all degrees of mental incompetency known to the law. (*Jacks* v. *Estee*, 139 Cal. 507 [73 Pac. 247].) A contract which is challenged on the ground of incompetency is ordinarily not void, but merely voidable. (*Ripperdan* v. *Weldy*, 149 Cal. 667 [87 Pac. 276]; 6 Cal. Jur. 33, sec. 14; 9 Cal. Jur. 117, sec. 21; 1 Black on Rescission, 672, sec. 254.) The author of Norton on Bills and Notes, fourth edition, page 295, says: 'A man of weak mind, if not a lunatic or fool, can contract. An epileptic or imbecile mind has been held competent to convey property, . . . and no mere want of business capacity or even monomania will, in the absence of fraud prevent a party from being bound upon a bill, note or endorsement. The mental incapacity to avoid such a contract must amount to an inability to understand the nature of the contract and to appreciate its probable conse-

quences.' It is the settled law of California that an adjudication of the incompetency of a testator is merely *prima facie* evidence of his incapacity to make a valid will. (1 Alexander on Wills, 449, sec. 335; *Estate of Johnson,* 57 Cal. 529; *Estate of Johnson,* 200 Cal. 299 [252 Pac. 1049].) Section 1767, Code of Civil Procedure, defines 'incompetent,' 'mentally incompetent' and 'incapable' to mean 'any person who, though not insane, is by reason of old age, disease, weakness of mind, or for any other cause, unable, unassisted, to properly manage and care for himself or his property, and by reason thereof would be likely to be deceived or imposed upon by artful and designing persons.'

■ When, however, a court has regularly adjudged one to be incompetent, he thereby becomes incapable of making a valid contract, and it is deemed to be void, not because he is unable, unassisted, to properly care for his property, or lacked understanding of the nature and effect of the particular transaction, but because the decree of incompetency is notice to the world of his incapacity to make a valid contract. Section 40, Civil Code, provides that: 'After his incapacity has been judicially determined, a person of unsound mind can make no conveyance or other contract, nor delegate any power or waive any right, until his restoration to capacity. . . . ' Likewise, it is provided in section 38, Civil Code, that 'A person entirely without understanding has no power to make a contract of any kind, . . . ' It is contended that section 40, Civil Code, *supra,* applies only to insane persons since the latter portion of the section permits the discharge and restoration to competency by means of a certificate from the medical superintendent of the asylum to which the patient has been committed. But evidently this section of the code was not intended to be so restricted. Section 1764, Code of Civil Procedure, authorizes the appointment of a guardian of the person and estate of an insane person, and also of one who is merely incompetent. It seems evident that the term incompetent is intended to include not only the insane, but also those who are afflicted with less serious derangements of the mind. The adjudication of mental incapacity therefore applies to both the insane and the incompetent regardless of the character or degree of the mental derangement. No further evidence of mental in-

capacity is required under our statute while such a decree remains in full force and effect. ■ The proof of the adjudication of incompetency presupposes a lack of mental capacity to understand the nature and effect of a contract. While the court has not specifically found that the indorsement and transfer of the cashier's check which is involved in the present case was void for lack of understanding, it did find that the act was performed while Bundy was laboring under an adjudication of incompetency. The effect of this finding was tantamount to a determination that the transaction was void for incapacity.

■ "The appellant contends that the endorsement and transfer of the check in question could be avoided only by means of a proceeding for rescission, and that the transaction could not be rescinded without first offering to restore the money which it expended. Rescission is a proper remedy by means of which to avoid a contract which is the product of an unsound mind. Section 39, Civil Code, provides that: 'A conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before his incapacity has been judicially determined, is subject to rescission. . . . ' But this is not the only remedy. Where affirmative relief is not sought, a defense to an action on a contract may be made by setting up fraud, undue influence or mental incapacity, without the necessity of resorting to the equitable action of rescission. (*Simon Newman Co.* v. *Lassing,* 141 Cal. 174 [74 Pac. 761]; *California Packing Corp.* v. *Larsen,* 187 Cal. 610 [203 Pac. 102]; *Mundorff* v. *Ramm,* 66 Cal. App. 553, 567 [226 Pac. 820]; 12 Cal. Jur. 786, sec. 52.) When the remedy of rescission is resorted to, it is necessary to show reasonable diligence, and except where one is subject to duress or mental disability, it is necessary to offer to restore everything of value which has been received. (Sec. 1691, Civ. Code.) But in the present case it was not necessary for the respondent to offer to restore the money paid by appellant. The court found that 'W. L. Bundy received nothing of value for his endorsement of the check.' Where no consideration is received as an inducement for the execution of a contract, no offer to restore is necessary. (*McNeese* v. *McNeese,* 190 Cal. 402, 405 [213 Pac. 36]; *Simmons* v. *Briggs,* 69 Cal. App. 447

[231 Pac. 604]; *Mundorff* v. *Ramm, supra; Anglo-Californian Bank* v. *Ames,* 27 Fed. 727, 730.) . . .

██ "Finally, the appellant contends that the transfer of the check by Bundy was valid and binding upon his estate, because at the time of the transfer an appeal from the adjudication of incompetency was pending and the judgment was therefore not final. In other words, it is asserted that the appeal suspended the effect of the decree of incompetency, and that Bundy was presumed to be capable of executing a valid contract until the judgment was affirmed on appeal. This presents the question as to whether section 40, Civil Code, which provides that 'After his incapacity has been judicially determined, a person of unsound mind can make no conveyance or other contract,' refers only to a *final* adjudication of incompetency.

"Section 1908, Code of Civil Procedure, provides that a judgment or decree is conclusive with respect to the personal relation or condition of an individual. The rule is that a judgment is conclusive as to all issues which appear upon its face to have been determined, or which were actually and necessarily included therein. (Sec. 1911, Code Civ. Proc.) While it is true that 'An action is deemed to be pending from the time of its commencement until the final determination upon appeal' (sec. 1049, Code Civ. Proc.) this does not mean that a decree which directly passes upon the personal status of an individual and determines him to be *non compos mentis* is suspended and nullified in its effect pending an appeal therefrom. The general rule regarding the effect of an appeal upon a judgment is expressed in 2 Freeman on Judgments (5th ed.), section 722, as follows: 'The effect of an appeal, with proper bond to stay proceedings, is, merely that it suspends the right to execution, but leaves the judgment, until annulled or reversed, binding upon the parties as to every question directly decided.' ██ This rule is modified in the jurisdiction of California, to the extent that a judgment is not competent as evidence to prove the facts therein recited until it has become final. But this is a mere rule of evidence, and does not change the inherent effect of the judgment. It is the undisputed rule in California that a judgment is not admissible in evidence to prove incom-

petency, or any other facts therein recited, until it has become final. (*Fry* v. *Baltimore Hotel Co.*, 80 Cal. App. 415, 424 [252 Pac. 752]; *Baker* v. *Eilers Music Co.*, 175 Cal. 652 [166 Pac. 1006]; 2 Cal. Jur. 412, sec. 177.) But in the present case this rule of evidence is not involved, for the decree adjudging Bundy to be incompetent was affirmed on appeal and became final January 26, 1920, when the *remittitur* was filed, and this judgment was not offered in evidence until the time of the trial in the present case on December 2, 1924. It was, therefore, competent evidence of his incapacity. Where a decree has been duly rendered in a proceeding instituted for the express purpose of determining the mental capacity or legal status of a person, it becomes constructive notice to the world of his incapacity and he is thereafter incapable of making a valid contract or conveyance of property under the provisions of section 40, Civil Code, even pending an appeal from the judgment, at least if the judgment eventually proves to have been a valid one. In 2 Freeman on Judgments, *supra,* section 902, it is said courts regard a ' . . . statutory proceeding for the appointment of a guardian for the person and property of a lunatic or mentally incompetent person as a proceeding *in rem* designed to determine the legal capacity of the alleged incompetent to make contracts and to manage and dispose of his estate . . . the appointment of a guardian determines his status in this respect as against the whole world, and is ordinarily conclusive. . . . ' (*Kellogg* v. *Cochran,* 87 Cal. 192, 196 [12 L. R. A. 104, 25 Pac. 677].) In the case of *Dulin* v. *Pacific W. & C. Co.,* 98 Cal. 304, 307 [33 Pac. 123], discussing the office of the writ of *supersedeas,* the court says: 'There are many judgments, however, which are self-executing, or which have an intrinsic effect, upon which there are no proceedings to be stayed, and which will not be affected by an appeal therefrom. A judgment . . . determining the status of an individual, (etc.) . . . are instances of such judgments. In *Walls* v. *Palmer,* 64 Ind. 496, a judgment had been rendered suspending the petitioner from practicing as an attorney, and it was urged that an appeal therefrom had the effect of restoring him to his right to practice during the pendency of the appeal.

The court, however, held that to give that effect to the appeal would be to reverse the judgment of the suspension before the appeal was judicially decided. ·. . . The only effect of an appeal to a court of error, when perfected and while pending, is to stay execution upon the judgment from which it is taken. . . . The appeal suspends its force as a conclusive determination of the rights of the parties, but the stay of proceedings consequent upon the appeal is limited to the enforcement of the judgment itself, and does not destroy or impair its character.' In support of its contention that an appeal from an adjudication of incompetency has the effect of restoring the incompetent to normal capacity and validating his contracts and acts pending the appeal, the appellant relies chiefly upon the case of *Coburn* v. *Hynes,* 161 Cal. 685 [120 Pac. 26]. That case involved an application for a writ of *supersedeas* to prevent a guardian who had been appointed by the court from taking charge of the property of the ward pending an appeal from the decree. The question of suspending the effect of the adjudication of incompetency was not involved in that case. The court merely held that since the statute did not authorize a guardian to take charge · of the estate pending an appeal that he had no such power. But the powers of a guardian as a trustee appointed by law are purely statutory, while the status of an individual with respect to his legal capacity to execute a valid contract is quite another thing, and depends upon the formal adjudication of a court. The suspending of the effect of such a decree pending an appeal would be likely to result in great damage and injustice to the incompetent and his estate. Recognizing this fact, and the necessity for statutory authorization for a guardian to take charge of an estate pending an appeal, section 1765, Code of Civil Procedure, which defines the powers of a guardian, was amended to authorize him, in the discretion of the court, to take charge of both the person and estate of an incompetent person, pending an appeal from the order appointing the guardian. We are of the opinion that the endorsement and transfer of the cashier's check after the adjudication of incompetency and pending the appeal was therefore void, and that the court's finding of the existence

of this adjudication of incompetency was equivalent to holding that the transaction was void for lack of capacity.'' The judgment is affirmed.

Langdon, J., Shenk, J., Richards, J., Seawell, J., Preston, J., and Waste, C. J., concurred.