[L. A. Nos. 16427, 16471. In Bank.—December 21, 1940.]

CATHERINE M. CARROLL, Appellant, v. RAYMOND A. CARROLL et al., Defendants; THE PRUDENTIAL INSURANCE COMPANY OF AMERICA (a Corporation) et al., Respondents.

C. C. Caswell and Charles E. McGinnis for Appellant.

Arch. H. Vernon, George W. Adams and John Q. Adams for Respondents.

SPENCE, J., *pro tem.*—This action was brought by plaintiff against her husband and several other defendants, the prayer of the complaint containing fourteen paragraphs asking various forms of relief. As to the husband, it sought among other things cancellation of a deed, a declaration of trust as to all property described in the complaint, an accounting, a decree quieting title and a money judgment. As to the other defendants, it sought an injunction restraining the foreclosure of a certain deed of trust and a decree cancelling said deed of trust. The trial of the action resulted in a judgment in favor of plaintiff and against her husband quieting her title to the several parcels of property described in the complaint and awarding her a money judgment in the

sum of $422,297.05. No appeal was taken from those portions of the judgment. Said judgment also provided that plaintiff take nothing against the remaining defendants and that parcel one of the property was subject to the above-mentioned deed of trust which was given to secure a note in the principal sum of $20,000. The appeal numbered L. A. 16427 is taken by plaintiff from the last-mentioned portions of said judgment.

No restraining order or injunction was issued by the trial court, and, during the pendency of the action, said deed of trust was foreclosed and the property was sold for $23,000 to defendant The Prudential Insurance Company of America, the beneficiary named in said deed of trust. Thereafter a dispute arose concerning the right to the rentals from said property and the tenant, being uncertain as to who was entitled thereto, refused to pay said rentals to either plaintiff or the defendant purchaser. Upon motion of said defendant, the trial court appointed a receiver to collect said rentals and to hold the same subject to the further order of the court. The appeal numbered L. A. 16471 is taken by plaintiff from the order appointing the receiver.

It appears that the main controversy involved in the action was the controversy between plaintiff and her husband arising out of the actions of the husband in dealing with a large amount of real and personal property of plaintiff. The trial court found in favor of plaintiff on practically all of the issues involved in this main controversy and neither plaintiff nor her husband has appealed from the portions of the judgment relating solely to them. Suffice it to state with respect to said controversy that the trial court found that for many years prior to the filing of the action "the defendant Raymond A. Carroll, did and has followed towards the plaintiff a constant course of intimidation, menace, threats, physical restraint and duress for the purpose of defrauding the plaintiff of her property and coercing the plaintiff to part with her property for the benefit of the defendant Raymond A. Carroll and in furtherance of his interests" and that the husband had "by persuasion, threats and misrepresentations" induced plaintiff to sign various instruments.

The controversy which was incidental to the main controversy and which was the only controversy in which the remaining defendants were concerned involved solely the

claim of plaintiff that a certain note and deed of trust were invalid. Said note and deed of trust, which covered only parcel one of the property described in the complaint, were admittedly executed by plaintiff on August 23, 1929, and the proceeds thereof were admittedly paid to plaintiff's husband pursuant to plaintiff's written order. Plaintiff's claim of invalidity was based upon the alleged pendency of certain proceedings relating to her competency at the time of the execution of said instruments. In this connection, it should be stated that there was no allegation or proof that plaintiff was in fact incompetent at the time of the execution of said instruments, the claim being that said note and deed of trust were invalid as a matter of law by reason of the alleged pendency of the above-mentioned proceedings. We will therefore direct our attention to the facts concerning said proceedings.

On April 17, 1929, an affidavit was filed in the superior court alleging that plaintiff was insane. Upon the hearing it was found that plaintiff was "mentally sick and bordering on insanity, but not dangerously insane" and plaintiff was thereupon committed to the custody of the psychopathic probation officer under the provisions of section 2167b of the Political Code and was placed in Casa del Mar Sanitarium. On May 29, 1929, in an incompetency proceeding filed in the probate court under the provisions of the Code of Civil Procedure (secs. 1763–1767), plaintiff was adjudged to be incompetent. On August 8, 1929, plaintiff was released from the sanitarium and was permitted to return to her home. On August 15, 1929, plaintiff signed and filed a petition in the incompetency proceedings in the probate court seeking a decree judicially restoring her to competency. (Code Civ. Proc., sec. 1766.) The hearing on said petition was had on August 22, 1929, and the court found and decreed "that said Catherine M. Carroll is now fully restored to mental competency and was restored to mental competency at the time her petition for restoration to competency was verified and filed herein." This decree was signed by the judge of the probate court and was filed on August 22, 1929. The note and deed of trust in question were signed by plaintiff on the following day. Thereafter and on September 5, 1929, the clerk entered in the judgment book said decree restoring plaintiff to competency. It does not appear that any further steps were taken in the proceeding brought under the sections of the Political Code until

October 24, 1929, when the court dismissed said proceeding upon the recommendation of the psychopathic probation officer.

The foregoing facts with respect to said proceedings are undisputed and plaintiff contends that the trial court erred in admitting in evidence said note and deed of trust, executed on August 23, 1929, and in finding that said instruments were valid and in decreeing that parcel one of the property was subject to said deed of trust. In our opinion, this contention is without merit.

Plaintiff relies upon section 40 of the Civil Code which provides in part, "After his incapacity has been judicially determined, a person of unsound mind can make no conveyance or other contract, nor delegate any power or waive any right, until his restoration to capacity." Plaintiff apparently takes the position that her incapacity was judicially determined in the so-called insanity proceeding brought under the provisions of the Political Code and also in the incompetency proceedings brought in the probate court under the provisions of the Code of Civil Procedure and that the note and deed of trust were executed prior to her "restoration to capacity".

We may first dispose of the so-called insanity proceeding. It appears well settled that such proceedings are summary proceedings instituted for a particular purpose and that "insanity or incapacity is not 'judicially determined' within the meaning of section 40 of the Civil Code" by a commitment in such proceedings instituted under the sections of the Political Code. (*Guardianship of Carniglia*, 139 Cal. App. 629, 631 [34 Pac. (2d) 752] ; see, also *Hitch* v. *Superior Court*, 2 Cal. App. (2d) 406 [38 Pac. (2d) 190] ; *Fetterley* v. *Randall*, 92 Cal. App. 411 [268 Pac. 434].) In her reply brief, plaintiff suggests that the "psychopathic record placed the plaintiff, to say the least, under the provisions of section 39" of the Civil Code, which section relates to conveyances or contracts "of a person of unsound mind, but not entirely without understanding, made before his incapacity has been judicially determined." It is a sufficient answer to this suggestion to point out again that plaintiff did not allege or prove that she was in fact of unsound mind at the time of the execution of the instruments in question. She merely alleged and proved the fact that said proceedings were had

under the provisions of the Political Code and relied upon such allegations and proof to establish her incapacity as a matter of law. But the fact that said proceedings were had did not, under the authorities cited, have the effect of establishing her incapacity as a matter of law.

This brings us to a consideration of the so-called incompetency proceedings brought in the probate court under the provisions of the Code of Civil Procedure (secs. 1763–1767). In *Hellman Commercial T. & S. Bank* v. *Alden,* 206 Cal. 592, the court said at page 604 [275 Pac. 794], "When, however, a court has regularly adjudged one to be incompetent, he thereby becomes incapable of making a valid contract, and it is deemed to be void, not because he is unable, unassisted, to properly care for his property, or lacked understanding of the nature and effect of the particular transaction, but because the decree of incompetency is notice to the world of his incapacity to make a valid contract. . . . No further evidence of mental incapacity is required under our statute while such a decree remains in full force and effect." (See, also, *O'Brien* v. *United Bank etc. Co.,* 100 Cal. App. 325 [279 Pac. 1048].) It is therefore clear that if the note and deed of trust had been executed by plaintiff while the decree of May 29, 1929, adjudging her to be an incompetent, was in force and effect, she could rely on said decree alone to establish her incapacity as a matter of law. But plaintiff executed said note and deed of trust on August 23, 1929, which was the day following the signing and filing of the decree of the probate court restoring her to competency.

██ Plaintiff takes the position that while this decree was so signed and filed on August 22, 1929, and prior to the time that she executed said note and deed of trust on August 23, 1929, she was still incompetent as a matter of law until September 5, 1929, when the clerk entered said decree in the "judgment book". She cites and relies upon section 668 of the Code of Civil Procedure which then provided: "The clerk must keep, with the records of the court, a book to be called the 'judgment book', in which judgments must be entered" and section 664 of the same code which then provided in part, "In no case is a judgment effectual for any purpose until so entered." In other words, plaintiff claims that said sections of the Code of Civil Procedure were applicable and that the decree signed and filed on August 22, 1929,

was ineffectual for any purpose until entered in the "judgment book" on September 5, 1929, and therefore she was incompetent as a matter of law on August 23, 1929, when she executed the note and deed of trust.

We cannot agree with plaintiff that sections 664 and 668 of the Code of Civil Procedure were applicable and that entry in the "judgment book" of the decree of the probate court restoring plaintiff to competency was necessary before said decree became effectual. Said sections 664 and 668 are found in Title VIII of Part II of the Code of Civil Procedure which is entitled "Trial and Judgment in Civil Actions." A "civil action" is " . . . an ordinary proceeding in a court of justice by which one party prosecutes another. . . . " (Code Civ. Proc., secs. 22 and 30.) ▊ A proceeding for restoration to competency is not a "civil action" but is a "special proceeding". (Code Civ. Proc., sec. 23.) The proceeding to restore plaintiff to competency was brought under the then section 1766 of the Code of Civil Procedure which was then found in Part III of said code entitled "Special Proceedings of a Civil Nature" and in Title XI thereof entitled "Proceedings in Probate Courts". Under the last-mentioned title was then found section 1704 of the Code of Civil Procedure. Said section 1704 provided in part "All orders and decrees of the court or the judge must be entered at length in the minute-book of the court, or must be signed by the judge and filed; but decrees of distribution must always be so entered at length." We are of the view that the manner of entering or of signing and filing the decree restoring plaintiff to competency was governed by said section 1704 and not by sections 664 and 668 of the Code of Civil Procedure.

▊ Plaintiff has cited numerous authorities but none holding that sections 664 and 668 of the Code of Civil Procedure are the sections governing the manner of entering a decree of a probate court. On the other hand, it was held in *Estate of Blythe,* 110 Cal. 226 [42 Pac. 641], that the manner of entering a decree in a proceeding to determine heirship was governed by section 1704 and not by section 668 of the Code of Civil Procedure; that such decree was properly entered in the minute-book as provided in said section 1704; and that it was not necessary to enter such decree in the "judgment book" provided for by said section 668. There are many other authorities holding or assuming that sections 664 and 668 of the

Code of Civil Procedure have no application to decrees in probate proceedings. (*Estate of Blythe,* 110 Cal. 229 [42 Pac. 642]; *Estate of Sheid,* 122 Cal. 528 [55 Pac. 328]; *Estate of Purcell,* 164 Cal. 300 [128 Pac. 932]; *Estate of Burnett,* 11 Cal. (2d) 259 [79 Pac. (2d) 89]; *Estate of Olsen,* 9 Cal. App. (2d) 374 [50 Pac. (2d) 70]; *Estate of Vizelich,* 123 Cal. App. 651 [11 Pac. (2d) 870]; *Andrews* v. *Metzner,* 83 Cal. App. 764 [257 Pac. 203].) And it is said in 14 California Jurisprudence at pages 922 and 923 with reference to decrees in probate proceedings, ''They are not judgments within the meaning of the code requirement that judgments be entered in the judgment book.'' There may be some lack of clarity in some decisions as to whether a particular entry referred to was an entry in the ''minute-book'' or an entry in the ''judgment-book'' but we find no decision holding that a decree of a probate court must be entered in the judgment-book referred to in said section 668. In *Estate of Purcell,* 164 Cal. 300 [128 Pac. 932], the court said at page 312, ''On January 12th this formal judgment was filed and entered in the judgment book. The record so designates the book but it was evidently intended to refer to the 'minute book' in which probate orders and decrees are required to be entered. (Code of Civil Procedure, section 1704).'' █ The procedure provided for in said section 1704 is a ''procedure which is peculiar to probate'' (*Estate of Exterstein,* 2 Cal. (2d) 13, 16 [38 Pac. (2d) 151]) and it seems clear that since the amendment of said section in 1921, the signing and filing of a decree of a probate court, other than a decree of distribution, is the equivalent of the entry of such decree in the minute-book. As was said in *Estate of Janota,* 124 Cal. App. 238, 240 [12 Pac. (2d) 163], ''Such signing and filing in accordance with section 1704 of the Code of Civil Procedure was the full equivalent of the ordinary entry of a decree or judgment.'' (See, also, *Estate of Backesto,* 63 Cal. App. 265, 272 [218 Pac. 597].)

█ Plaintiff attempts to draw a distinction between a ''judgment'' of a probate court and a ''decree'' of a probate court but we know of no such distinction. The word ''judgment'' and the word ''decree'' appear to be used interchangeably in our code sections relating to probate proceedings and in the practice under such sections. It has been said that ''A decree is the judgment of a court of equity, court of probate, or

court of admirality," (*Kindig* v. *Palos Verdes Home Assn.*, 33 Cal. App. (2d) 349, 355 [91 Pac. (2d) 645]) and that the word "decree" is employed "not as a designation of something different from a judgment, but rather a judgment of a particular character." (*McGarrahan* v. *Maxwell*, 28 Cal. 75; see, also, *Coleman* v. *County of Los Angeles*, 180 Cal. 714 [182 Pac. 440].) We are of the opinion that said section 1704, referring to "orders and decrees", was intended to cover all decisions of the probate court in probate proceedings whether such decisions might be technically referred to as orders, decrees, or judgments, and said section appears to have been so construed in the authorities above cited.

Plaintiff also places reliance upon section 1713 of the Code of Civil Procedure which then provided, "Except as otherwise provided in this title, the provisions of part two of this code are applicable to and constitute the rules of practice in the proceedings mentioned in this title." But the obvious answer is that the manner of entering or of the equivalent signing and filing of decrees in probate proceedings was provided for in said section 1704 which was part of the same title as was said in section 1713. It was therefore "otherwise provided in said title and said sections 664 and 668 were not made applicable to such decrees in probate proceedings by the provisions of said section 1713. (See *S. F. Protestant Orphan Asylum* v. *Superior Court,* 116 Cal. 443, 450 [48 Pac. 379]; *In re Sanderson,* 74 Cal. 199, 205 [15 Pac. 753].) In this connection, it is significant to note that said section 1713 was in effect at the time of the decision in *Estate of Blythe,* 110 Cal. 226 [42 Pac. 641], but it was there held that it was unnecessary to enter a probate decree in the "judgment book" provided for in section 668 of the Code of Civil Procedure.

Plaintiff apparently makes the further contention that under the findings of the trial court, she was entitled to rescind and did rescind the note and deed of trust. A reading of the findings relating to the alleged right to rescind and the act of rescission by plaintiff show that these findings relate solely to the issues between plaintiff and her husband. We find no evidence and no findings showing that plaintiff had a right to rescind as against the remaining defendants. Section 1689 of the Civil Code permits a party to rescind if his consent was obtained " . . . through duress, menace, fraud

or undue influence, *exercised by or with the connivance of the party as to whom he rescinds . . . ''.* (Italics ours.) There is no evidence and no finding connecting the remaining defendants in any way with any duress, menace, fraud or undue influence exercised by plaintiff's husband. On the contrary, it appeared and the trial court found and concluded that the note and deed of trust were executed by plaintiff for a valuable consideration and without the remaining defendants ''participating in or having any knowledge or notice'' of any of the acts of plaintiff's husband of which plaintiff complained. It thus appears that there was no duress, menace, fraud or undue influence ''exercised by or with the connivance of'' the remaining defendants and any attempted rescission by plaintiff was ineffectual as against the remaining defendants.

We therefore conclude that the portions of the judgment from which appeal numbered L. A. 16427 was taken should be affirmed and we do not believe that any useful purpose would be served by a discussion of the points raised on appeal numbered L. A. 16471, which was the appeal taken by plaintiff from the order appointing the receiver. It having been determined that the deed of trust was valid and it appearing that parcel one of the property was sold upon foreclosure pursuant to the terms of said deed of trust, it follows that plaintiff had no right, title or interest in said parcel one at any time after said sale upon foreclosure. If we assume, without deciding, that said order appointing the receiver was erroneous, plaintiff could not benefit by a reversal thereof and the order should therefore be affirmed. (*Davies* v. *Ramsdell,* 40 Cal. App. 432 [183 Pac. 702].)

The portions of the judgment from which appeal numbered L. A. 16427 was taken are affirmed and the order appointing the receiver from which appeal numbered L. A. 16471 was taken is also affirmed.

Shenk, J., Carter, J., Traynor, J., and Edmonds, J., concurred.

HOUSER, J., Dissenting.—I dissent (sec. 664, Code Civ. Proc.).

Rehearing denied. Houser, J., voted for a rehearing.